IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.                                                                    17-CR-249-A

JASON OSEI BONSU a/k/a Nana Kwasi,

                            Defendant.



_____

### PLEA AGREEMENT

The defendant, JASON OSEI BONSU, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.


### I.        THE PLEA AND POSSIBLE SENTENCE

1.        The defendant agrees to waive indictment and to plead guilty to a one count Information which charges a violation of Title 18, United States Code, Section 1349 [conspiracy to commit wire fraud], for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $250,000 or twice the gross pecuniary gain or loss, whichever is greater, a mandatory $100 special assessment, and a term of supervised release of three years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.     The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release.  As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.     ELEMENTS AND FACTUAL BASIS

3.     The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

a.     Two or more persons, in some way or manner, agreed to accomplish a common and unlawful plan to commit a fraud crime listed in Title 18, Chapter 63, that is Title 18, U.S.C. § 1343 (wire fraud); and

b.     The defendant knew the unlawful purpose of the plan and willfully joined in it.

## FACTUAL BASIS

4.     The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

a.     Between in or about December 2015, and in or about May 2017, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant, JASON OSEI BONSU, did knowingly, willfully, and unlawfully, combine, conspire, and agree with others, to include ADAMS AMEN, to commit wire fraud.

2

b.     The defendant and his conspirators devised a scheme and artifice to defraud victims and to obtain money from victims by means of false and fraudulent pretenses, representations, and caused to be transmitted by means of wire communications in interstate commerce, writings, signs, and signals, for the purpose of executing such scheme and artifice.

c.     In furtherance of the scheme, the defendant's coconspirators utilized a dating website, namely MillionaireMatch.com, to engage victims in online and telephonic communications. The coconspirators' goal was to develop rapport with victims and convince victims they were developing romantic relationships via the internet. In furtherance of the scheme, coconspirators used downloaded photographs from the internet that purported to depict the individuals with whom the victims communicated; these images did not depict the coconspirators. For example, Victim 1 received images of a person known to her as "Marvin Roecker," but the image actually depicted a real estate agent from Texas, whose name is not "Marvin Roecker."

d.     After successfully building rapport, the coconspirators asked victims to wire money to assist with fictitious business ventures, family emergencies, or inheritances. Victims wired funds to accounts in Ghana, the United Kingdom, or to accounts in the United States controlled by Ghanaian nationals, including the defendant.

e.     Victim 1 resides in the Western District of New York. Coconspirators contacted Victim 1 through MillionaireMatch.com using the alias "Marvin Roecker" between December 2015 and May 2016. Throughout this timeframe, "Marvin" gained Victim 1's trust and Victim 1 thought she was in a romantic online relationship with "Marvin."

f.     "Marvin" asked Victim 1 to wire money for a business venture, and Victim 1 complied. On March 2, 2016, Victim 1 wired $65,000 to an account controlled by ADAMS AMEN. Text message correspondence between ADAMS AMEN and JASON OSEI BONSU demonstrates that both were participants in the scheme to defraud Victim 1. Specifically, the coconspirators discussed quickly withdrawing Victim 1's money after Victim 1 wired the money to ADAMS AMEN's account.

g.     In total, victims wired $96,250 directly to accounts controlled by JASON OSEI BONSU. JASON OSEI BONSU was directly involved in three other transactions totaling $115,000. The total loss amount is $211,250.

h.     At least one victim, namely Victim 1, suffered substantial financial hardship as a result of the fraudulent scheme.

## III.    SENTENCING GUIDELINES

5.     The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

6.     The government and the defendant agree that Guidelines § 2B1.1(a)(1) applies to the offense of conviction and provides for a base offense level of 7.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.     The government and the defendant agree that the following specific offense characteristics do apply:

a.     the 10 level increase pursuant to Guidelines § 2B1.1(b)(1)(F) [the total loss including relevant conduct was in excess of $150,000];

b.     the 2 level increase pursuant to Guidelines § 2B1.1(b)(2)(A)(iii) [offense resulted in substantial financial hardship to one or more victims];

c.     the 2 level increase pursuant to Guidelines § 2B1.1(b)(10)(B) [a substantial part of the fraudulent scheme was committed from outside the United States].

## ADJUSTED OFFENSE LEVEL

8.     Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 21.

## ACCEPTANCE OF RESPONSIBILITY

9.      At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of 18.

## CRIMINAL HISTORY CATEGORY

10.      It is the understanding of the government and the defendant that the defendant's criminal history category is I.  The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase.  The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

11.      It is the understanding of the government and the defendant that, with a total offense level of 18 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 27 to 33 months, a fine of $10,000 to $100,000, and a period of supervised release of 1 to 3 years.  Notwithstanding this, the defendant understands that at sentencing, the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

12.     The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above.  The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

13.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement or recommended by either party and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV.     STATUTE OF LIMITATIONS

14.     In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement.  This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.   ALIEN STATUS

15.    The defendant understands that, as a result of the defendant's guilty plea and conviction, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

16.    The defendant acknowledges that the defendant is not a citizen of the United States and that the defendant is on notice that the defendant's ability to enter, remain and/or reside in the United States is subject to the laws, regulations and associated policies of the Department of Homeland Security.   The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status will be determined by the Department of Homeland Security in a separate proceeding.   The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status.

## VI.   GOVERNMENT RIGHTS AND RESERVATIONS

17.    The defendant understands that the government has reserved the right to:

a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    advocate for a specific sentence consistent with the terms of this agreement including the amount of [restitution and/or] a fine and the method of payment;

d.  modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor;

e.  oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

18.  At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under Magistrate's No. 17-MJ-5245.

## VII.  RESTITUTION AND FINANCIAL PENALTY PROVISIONS

19.  The defendant understands, and the parties agree, that the Court must require restitution in the amount of $211,250 to be paid to victims in this case as part of the sentence pursuant to Sentencing Guidelines § 5E1.1 and Title 18, United States Code, Section 3663A. The defendant understands that defendant will not be entitled to withdraw the plea of guilty based upon any restitution amount ordered by the Court.

20.  The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including,

but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

21.     The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

22.     The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and subject to immediate enforcement by the United States. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum

schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

23.    The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

## VIII.  APPEAL RIGHTS

24.    The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence.  In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.  The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section VII of this agreement.

25.    The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the

future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

26.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence.  However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## IX.     FORFEITURE PROVISIONS

27.     As a condition of the plea, the defendant agrees not to contest any forfeiture or abandonment proceeding that may be brought by the United States and agrees to immediately forfeit all of the defendant's right, title and interest, whatever that may be, to any and all property, which are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), which are in the possession and control of the defendant or the defendant's nominees.  That property includes:

**CURRENCY:**

a.      The sum of $3,600.00 United States currency seized on or about July 26, 2017, and presently being held as evidence by the government.  The defendant further agrees that this amount is properly forfeitable as the $3,600.00 was proceeds of the defendant's illegal activities and waives any other rights the defendant may possess to contest that forfeiture.

**FINANCIAL ACCOUNTS:**

a.   The contents and monies contained within TD Bank account no. 432-2410244 in the name of Jason Bonsu.

b.   The contents and monies contained within Santander UK PLC closed account number SC 090128 AC 51133567 which had a balance of GBP 24,905.55 and/or transferred to a Santander UK PLC fraud ledger or other similar account.  According to xe.com currency converter GBP 24,905.55 is approximately equal to $34,888.21 United States currency as of February 5, 2018.

Since the above described property were funded with proceeds obtained or derived from the criminal conduct that forms the basis of this Plea Agreement, the defendant specifically agrees that it is proper to forfeit this property to the United States.

28.   After the acceptance of the defendant's guilty plea, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the Court will issue a Preliminary Order of Forfeiture for the items listed above.  The defendant hereby waives any right to notice of such Preliminary Order of Forfeiture.  The defendant further consents and agrees that the Preliminary Order of Forfeiture and a Final Order of Forfeiture shall issue and become final as to the defendant prior to sentencing and agrees that it shall be made part of the defendant's sentence and included in the judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure.   The defendant further agrees to waive any time restrictions or requirements as provided in Title 18, United States Code, Section 983, any notice provisions in Rules 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that the defendant understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the

Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the guilty plea is accepted. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

29.     The defendant knowingly, intelligently, and voluntarily waives his right to a jury trial on the forfeiture of the assets. The defendant knowingly, intelligently, and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding, including any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, as to this criminal proceeding or any related civil or administrative proceeding. The defendant further agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine regarding the forfeiture of assets by the United States.

## **TOTAL AGREEMENT AND AFFIRMATIONS**

30.     This plea agreement represents the total agreement between the defendant, **JASON OSEI BONSU**, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

BY:     _____

SCOTT S. ALLEN, JR.
Assistant United States Attorney
Dated:  February 16, 2018

I have read this agreement, which consists of 14 pages.  I have had a full opportunity to discuss this agreement with my attorney, JOEL DANIELS, Esq.  I agree that it represents the total agreement reached between myself and the government.   No promises or representations have been made to me other than what is contained in this agreement.  I understand all of the consequences of my plea of guilty.  I fully agree with the contents of this agreement.  I am signing this agreement voluntarily and of my own free will.

_____
JASON OSEI BONSU
Defendant
Dated:  February 16, 2018

_____
JOEL DANIELS, ESQ.
Attorney for the Defendant
Dated:  February 16, 2018